BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Looi

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KWONG YEEN EDMOND LOOI,<br><br>Defendant. | No. CR 07-0353-01 JSW<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>**Hearing Date**: Thursday, Sept. 20, 2007 at 2:00 p.m. |

## Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. This Court Should Adopt the Plea Agreement and Impose the Sentence Negotiated by AUSA Michelle Morgan-Kelly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Unusually early and complete acceptance of responsibility merits the forty-six month sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. While Reprehensible, the Instant Offense is Objectively Less Serious Than Most Child Pornography Crimes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. Mr. Looi Voluntarily Terminated Criminal Conduct . . . . . . . . . . . . . . . . . 6

D. Mr. Looi's Extraordinarily Early Plea Avoided Complex Litigation . . . . . 7

E. The Factors Important to the Government in Fashioning the Plea Agreement Should Be Considered by this Court in Fashioning the Appropriate Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II. The "History and Characteristics of the Defendant" Merits the Forty-Six Month Sentence Jointly Recommended by the Parties, and Comports with the Sentencing Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Table of Authorities

### Federal Cases

*United States v. Garcia*, __ F.3d __, 2007 WL. 2284347 (9th Cir. Apr. 10, 2007) . . . . . 9

*United States v. Knellinger*, Crim. No. 3:06 cr126, (E.D. Va. Jan. 25, 2007) (mem.) . . . 7

### Federal Statutes

18 U.S.C. § 3509(m) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 12, 13

18 U.S.C. § 3661 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Looi

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KWONG YEEN EDMOND LOOI,<br><br>Defendant. | No. CR 07-0353-01 JSW<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>**Hearing Date**: Thursday, Sept. 20, 2007 at 2:00 p.m. |

## Introduction

Only five months separates the joint recommendation of the parties in an 11(c)(1)(C) agreement from the sentence recommended by the Office of Probation. Because the forty-six month sentence jointly recommended by the parties better serves the goals of the Sentencing Reform Act, this Court should accept the carefully-negotiated plea agreement and impose the nearly four-year term urged by both the government and the defense.

## Discussion

The forty-six month sentence jointly recommended by the parties in an 11(c)(1)(C) agreement fairly achieves the goals of the Sentencing Reform Act of 1984, and should be imposed by the Court.

### I. This Court Should Adopt the Plea Agreement and Impose the Sentence Negotiated by AUSA Michelle Morgan-Kelly

It is no hyperbole to describe AUSA Michelle Morgan-Kelly as the harshest federal prosecutor of child sex offenses in the United States. Formerly of the Child Exploitation and Obscenity Section of the United States Department of Justice, Ms. Morgan-Kelly has successfully prosecuted child-porn and "traveler" cases throughout the United States, and has secured decades – if not centuries – of custodial sentences for these offenders. *See, e.g.*, US DOJ Press Release, at http://149.101.1.32/criminal/ceos/Press%20Releases/SDIN%20Justice%20sentencing%20PR_041205.pdf (visited Sept. 10, 2007). While prosecuting these cases, Ms. Morgan-Kelly did not hesitate to seek terrifically long sentences for sex crime offenders: fifteen years for a man sentenced in the Southern District of Indiana, *id.*, seventy-eight months for a man convicted before the Honorable Judge D. Lowell Jensen,[1] over five years for a man accused to traveling to Cambodia to have sex with a minor.[2] While in D.C., Ms. Morgan-Kelly obtained one of the longest reported sentences for child-pornography: *twenty-five years* for the defendant Bruce Schiffer.[3]

Of course, this Court has personal experience with the – vigor – that Ms. Morgan-Kelly brought to her job. In *United States v. Mark Godbey Moore*, CR 05-00693 JSW,

---

[1] *See* http://sanfrancisco.fbi.gov/dojpressrel/2007/sf030207.htm (visited Sept. 10, 2007).

[2] *See* http://www.usdoj.gov/usao/can/press/2007/2007_04_11_koklich.sentencing.press.html (visited Sept. 10, 2007).

[3] *See* http://washingtondc.fbi.gov/dojpressrel/pressrel06/wfo083006.htm (visited Sept. 10, 2007)

Ms. Morgan-Kelly passionately contested an interpretation of a guideline provision in a child-porn case (the Court will recall that this legal dispute also involved undersigned counsel). In the *Moore* case, Ms. Morgan-Kelly secured a negotiated settlement that still resulted in a sentence of over eight years.[4]

In sum, there is no federal prosecutor – and very few actors involved in the criminal justice system – who can boast a more comprehensive, national perspective on federal child pornography cases. Ms. Morgan-Kelly has a unique perspective on what facts typically contribute to a particular sentence, and her vast experience in the field gives her particular credibility on the custodial term necessary to avoid sentencing disparity.

It is, therefore, a particularly significant fact in the sentencing of young Edmond Looi that it was AUSA Michelle Morgan-Kelly who fashioned, and offered, the 11(c)(1)(C) agreement now before the Court. This plea agreement was not "conned" out of an inexperienced or soft-hearted prosecutor who was afraid to litigate, or who was unaware of the sentences received by child-porn defendants nationally. Instead, the fact that this *particular* prosecutor concluded that this was a just result carries special weight – far more weight, frankly, than the broader premise that the N.D. Cal. United States Attorney's Office endorses the proposed sentence. Just as a seasoned prosecutor often persuasively trades on her experience when she argues that a defendant or offense is particularly *bad*, here, Ms. Morgan-Kelly's expert evaluation is entitled to some deference when she concluded that this offense is atypically minor, in the grander scheme of child pornography crimes.

What were the bases for AUSA Morgan-Kelly's conclusion that Mr. Looi should receive this modest reduction from the guideline range? There were many, and each supports the proposed disposition.

---

[4] *See* http://www.usdoj.gov/usao/can/press/2006/2006_06_15_moore.sentencing.press.OPA.htm (visited Sept. 10, 2007).

**A. Unusually early and complete acceptance of responsibility merits the forty-six month sentence**

Mr. Looi's acceptance of responsibility far transcends that of most defendants. When interrogated by agents at the airport, the defendant immediately and openly admitted his criminal conduct, expressed his remorse, and described his need for treatment. His unusual level of acceptance continued as he faced federal prosecution. For example, Mr. Looi voluntarily waived his right to seek his release on bail – even though he had entered the United States legally, and had family members in the United States who would have gladly signed on his behalf. *See PSR* at 3 ¶ 3 (describing defendant's voluntary surrender of his right to seek release on bail). Guilty of possession of child pornography, Mr. Looi willingly agreed to remain in custody as he awaited plea and sentencing.

The Court will also notice that there is no indictment in this case – an atypical posture in a serious federal felony matter. Because Mr. Looi was prepared to accept responsibility so early in this case, he allowed the government to proceed by way of Information in magistrate court. *See PSR* at 3 ¶ 1. This extremely early concession by Mr. Looi permitted Ms. Morgan-Kelly to preserve significant government and grand jury resources.

This unusual degree of acceptance of responsibility continued as Mr. Looi made his way from the magistrate to the district court. Remarkably, this defendant – with no prior convictions – readily pled guilty to a nearly four year sentence at the very *first* appearance before this Court. Indeed, the Court will recall that Mr. Looi offered to waive the presentence report at that initial appearance, and proceed with summary sentencing – a proposal endorsed by AUSA Morgan-Kelly.

This Court has demonstrated its commitment to resolving criminal cases in a timely manner, and has chided both defense counsel and prosecutors for cases that drag on aimlessly for months, or years. What more can a criminal defendant do to resolve a case quickly, than plead guilty at the very first appearance before this Court? Mr. Looi's candid confession, waiver of his right to seek bail, waiver of indictment, immediate plea

before this Court, and agreement to expedited sentencing are all factors that Ms. Morgan-Kelly fairly considered when she extended the forty-six month 11(c)(1)(C) offer now before this Court. These factors apply with equal force in support of this Court's adoption of the proposed agreement and sentence.

**B. While Reprehensible, the Instant Offense is Objectively Less Serious Than Most Child Pornography Crimes**

In her report, Probation Officer Searles observes that the harm to the children portrayed in the images on Mr. Looi's computer and external hard drive "cannot be overstated." *See PSR, Sentencing Recommendation* at 1, Justification. No one with a modicum of human decency can contest that view; child pornography is a serious crime with long-term psychological ramifications for the victims of the offense.

Nonetheless, the challenge for those in the criminal justice system – the Court, the prosecution, and the defense – is to bring some level of dispassionate analysis to the offense and offender and to fashion a sentence appropriate for the *specific* crime. Every child pornography offense is serious, yes, but some crimes are far more heinous than others. Child pornography collectors who have taken the "next step," for example, by soliciting nude photos or approaching children, present a more-serious threat than someone who simply collects photos. Similarly, an offender who seeks child pornography by uploading or trading from his own collection perpetuates the stream of traffic in these images, and is more culpable than a "passive" collector.

More than any other AUSA, Ms. Morgan-Kelly has seen the entire gambit of federal sex offenses. She therefore has a particular expertise in gauging the culpability and danger of a child pornography defendant. Her forty-six month plea agreement in this case fairly reflects her evaluation that Mr. Looi was not comparable to the more-serious, and more-dangerous, collectors and distributors of child pornography. This young man did not solicit photos from minors, did not trade or e-mail child pornography via file-server software,[5] and has shown no indication of any tendency to take the next step into

[5] Importantly, the Postal Inspectors who started this case actively solicited "traded" pictures from Mr. Looi in return for child pornography, as part of the sting operation. *PSR*

becoming a predatory pedophile. AUSA Morgan-Kelly recognized that Mr. Looi was an atypical child pornography offender – and so, incidently, did ICE agents who specialize in this field. Ms. Morgan-Kelly and undersigned counsel reviewed the images on Mr. Looi's computer together at the ICE forensic laboratory, and the very experienced agents present during that evaluation agreed that his was a low-level offense. Like Ms. Morgan-Kelly, they had no objection to the forty-six month sentence. This Court should similarly distinguish Mr. Looi from far more dangerous child pornography offenders, and accept the 11(c)(1)(C) agreement.

**C. Mr. Looi Voluntarily Terminated Criminal Conduct**

An extremely important fact in Ms. Morgan-Kelly's evaluation of this case was Mr. Looi's voluntary termination of criminal conduct in the matter. As reported in the PSR, this entire case began as a sting operation by Postal Inspectors in New York. *PSR* at 3 ¶ 5. A postal inspector solicited purchasers on various chat groups in 2006. *Id.* Via the internet (and from Singapore), Mr. Looi expressed interest in purchasing DVDs containing child pornography that were offered by the Postal Inspector. *Id.* at 3 ¶ 6. The Postal Inspector provided descriptions of these videos (descriptions replicated in the presentence report). *Id.* at 4 ¶ 7. Apparently unsolicited, the inspectors then provided additional descriptions of the videos in a later e-mail. *Id.* at 5 ¶ 10. The PSR reports these descriptions (written by a Postal Inspector, not the defendant) in detail. *Id.* at 5 ¶ 10.

Reported in less detail is one of the most critical facts in this investigation: Edmond Looi then contacted whom he believed was the seller of these DVDs and (falsely) explained that he was not coming to the United States, thereby terminating the attempted purchase of child pornography. *Id.* at 6 ¶ 12. Moreover, Mr. Looi made no attempt to contact the seller-Inspector after this e-mail, or re-initiate the purchase. As the Inspector explained to Probation Officer Searles, "the defendant terminated the

---

at 3 ¶ 6. Although Mr. Looi certainly had images that he could have traded for the DVDs offered by the Postal Inspector, this young defendant flatly refused to do so. *See id.* ("The inspector asked the defendant whether he had any pictures to trade. Looi said he did not and instead wanted to buy them.")

prospective transaction before leaving for the United States and there is no evidence he actually intended to purchase child pornography during his trip to the United States." *Id.* at 7 ¶ 20.

Edmond Looi had no idea that he was e-mailing a Postal Inspector – instead of a seller of child pornography – when he discussed the purchase of the DVDs, or when he terminated the transaction. (Of course, had he suspected that a federal investigation was underway, he would have never traveled to the United States and into the arms of awaiting federal agents). The defendant's April 12 termination of the attempted purchase was the voluntary termination of criminal conduct, and deserves consideration in fashioning the appropriate sentence. Mr. Looi's voluntary termination of criminal conduct is another basis for the 11(c)(1)(C) sentence jointly urged by the parties. *See* 18 USC § 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense.")

**D. Mr. Looi's Extraordinarily Early Plea Avoided Complex Litigation**

As noted above, AUSA Morgan-Kelly and undersigned counsel jointly viewed the data from the seized computer within the ICE forensic laboratory in San Francisco. This is unusual: the government in this district has traditionally provided the defense a bit-by-bit copy of the seized computer as discovery (under a protective order).

This novel procedure is dictated by new provisions set forth in the Adam Walsh Act.[6] The severe limitations on defense access to discovery created by this Act have been subject to constitutional challenges across the country, including successful litigation in the Eastern District of Virginia[7] and a pending motion in the Eastern District of

---

[6] The Act, adopted July 26, 2006, is titled the Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248, 120 Stat. 587 (2006). The provision limiting discovery in child pornography cases is codified at 18 USC § 3509(m).

[7] *See United States v. Knellinger*, Crim. No. 3:06 cr126, (E.D. Va. Jan. 25, 2007) (mem.), available at http://www.fd.org/pdf_lib/knellinger.pdf (visited Sept. 12, 2007) ("Knellinger's request for a mirror image copy of his computer hard drive, which contains the child pornography images listed in the Superseding Indictment (Docket No. 14), is granted subject to the entry of an appropriate protective order and a certification by

California. This litigation is extensive, expensive, and complex, involving evidentiary hearings and the dueling testimony of forensic experts.

Undersigned counsel has close ties to Defender offices in other districts that have successfully litigated the restrictive discovery provisions of the Adam Walsh Act. Moreover, undersigned counsel is proficient in all of the forensic software involved in litigating such a challenge – such as EnCase and Forensic Tool Kit – and is a frequent national lecturer on criminal defense and forensic issues. At Mr. Looi's initial appearance, undersigned counsel and Ms. Morgan-Kelly discussed the anticipated litigation of the constitutionality of Adam Walsh Act and the new discovery limitations required by that statute.

Mr. Looi's plea quickly mooted that novel, and complex, litigation.

The government, of course, is undoubtably confident that it would defeat any challenge to the Adam Walsh Act discovery provisions. And, as this Court has seen, Ms. Morgan-Kelly is certainly not afraid to litigate. Nonetheless, there is an undeniable value to the government in choosing the case in which this motion will be litigated. Mr. Looi's facts – a simple child porn possession case, with voluntary termination of criminal conduct – do not present the factual background the government wants when fighting to uphold the Act. Moreover (modesty aside) undersigned counsel is not the advocate the government wishes to confront on the first such challenge in the Ninth Circuit. Mr. Looi's early plea – and his abandonment of this novel litigation – is another basis that supports the forty-six month 11(c)(1)(C) agreement now before the Court.

**E. The Factors Important to the Government in Fashioning the Plea Agreement Should Be Considered by this Court in Fashioning the Appropriate Sentence**

The factors above, which significantly contributed to this negotiated disposition, are precisely the types of considerations which often are not reflected in a presentence report. Perhaps by necessity, PSRs stand above the fray of litigation and do not reflect

---

counsel for Knellinger that he will use that copy for assessment and preparation of a defense.")

considerations such as novel constitutional challenges that have been surrendered by the defendant, or the extraordinary acceptance of responsibility demonstrated by foregoing release on bail, waiving the right to indictment, and an immediate plea.

These factors are, however, essential to understanding a negotiated disposition in the less-abstract world of actual litigation. Moreover, these factors are important equitable concerns that should be considered by the Court in arriving at a just sentence that comports with the goals of the Sentencing Reform Act of 1984.

The Ninth Circuit has recently emphasized that *Booker* eliminated traditional limitations on the factors and information that a sentencing court may consider when imposing a sentence under the Sentencing Reform Act. *See United States v. Garcia*, __ F.3d __, 2007 WL 2284347, *6 (9th Cir. Apr. 10, 2007) ("The district court, without the benefit of our more recent case law, adopted too narrow a view of its discretionary authority post-*Booker*.") As the Court explained in *Garcia*, "Just because a consideration was improper under the mandatory Guidelines regime does not mean that it is necessarily improper under the advisory Guidelines regime." *Id.*

The Ninth Circuit's decision in *Garcia* is entirely consistent with the statutory commands of Congress on the scope of information that is to be considered in fashioning a sentence. Section 3661 of Title 18, in fact, *prohibits* limitations on such information: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 USC § 3661. The background, character, and conduct of Mr. Looi as he admitted responsibility and relieved the government of any litigation burden in this case can – and should – be considered by this Court as it evaluates the 11(c)(1)(C) plea agreement before it.

## II. The "History and Characteristics of the Defendant" Merits the Forty-Six Month Sentence Jointly Recommended by the Parties, and Comports with the Sentencing Reform Act

The forty-six month sentence urged by the parties in this matter is supported by the factors that went into the negotiated disposition, discussed above. As a separate, but

equally compelling, basis, Mr. Looi's own "history and characteristics" merit the sentence reflected in the 11(c)(1)(C) agreement. *See* 18 USC § 3553(a)(1). At the outset, it bears emphasis is that Mr. Looi is a young man with absolutely no criminal history – not even an arrest. *See* PSR at 10 ¶¶ 41-43.

Mr. Looi is happily married, to a young woman named Peik who remains tremendously supportive. The couple married in 2001. *See PSR* at 11 ¶ 48. Mrs. Peik Looi has written a moving and detailed letter of support for her husband, Edmond. *See Exhibit A*, *Letter of Peik Khoon* at EL0002.

Mrs. Looi has known Edmond for thirteen years, and describes him as her "best friend and confidante." *Id.* She describes the defendant as one "who always put others before self." *Id.* Although this is certainly not a wealthy couple, Mrs. Looi describes in heart-rending detail the efforts that Edmond made to show his love and demonstrate his commitment to their marriage. *Id.* She explains that, "through the years, he has always been there for me, lending me moral and emotional support." *Id.* at EL00003. A quiet man, who stays home and supports his wife, Edmond shares with his wife a passion for classical music. *Id.* at EL00004. He also loves and supports his parents, and the parents of his wife. *Id.*

Mrs. Looi gives a valuable insight into the remorse – and the maturity – that Edmond Looi has exhibited as he deals with these charges:

//

//

//

//

> This incident has obviously given him unspeakable remorse and torment. While he is miles away from home without family or friends, coupled with the uncertainty of the future looming over him, he still thinks of others and tries to stay positive. In his letters home, he always tries to put on a brave front so that we will not worry too much and would always enquire of the family's wellbeing, reminding us to take care of ourselves, to move on with life, giving us advise and encouragement as we go along.

*Id.*

Mr. Looi's mother, who also is aware of the nature of these charges,[8] writes with equal candor about the character of her son. Edmond is described as "an ideal son." *Letter of Sock Koen Teo*, EL00005. She explains how her son saved "pocket money" before he had full-time employment, to buy her medical equipment for her blood pressure ailments and back aches. *Id.* His mother also described how Edmond struggled to save enough money to buy his own home – a home that is now in jeopardy, because he can no longer make payments on it. *Id.* at EL00006. Because of this present offense and impending custodial term, Edmond and Peik will now be forced delay starting the family that they had planned. *Id.* Sock Koen Teo also explains that she and her husband will be forced to continue working longer than they had planned, now that Edmond will not be there to support them. *Id.*

Edmond's father, Poh Yun Looi, echoes the sentiments of the defendant's mother. *See Exhibit A, Letter of Poh Yun Looi* at EL00008. Because of Edmond's support for his parents, the defendant and Peik have previously been unable to start their own family. *Id.* at EL00009. Mr. Looi describes Edmond as a "very supportive and filial son," who wants his parents to "relax and enjoy [their] golden years." *Id.*

The love and support of the defendant's wife and parents are repeated again and again throughout the many letters submitted on behalf of Edmond Looi. His brother describes Edmond as "especially sensitive and thoughtful," a "very caring husband" who "treasured family time." *Letter of Raymond Looi, Exhibit A* at EL00012. Edmond has his

---

[8] As is reflected in each of these letters, those writing in support of Edmond are fully aware of the nature and circumstances of the defendant's offense and conviction.

brother's "full love and support through this while ordeal." *Id.* He is described by his family as "every parent's dream child," *id.* at EL00014, a "thoughtful, kind, and considerate person," and a "responsible and hardworking person," *id.* at EL000015. Edmond's uncle described the defendant's mission trips to the poor countries in South East Asia, to build schools. *Id.* at EL000017. Edmond's brother-in-law summarizes the resolve of the entire clan: "It is our family's promise to see Edmond through these difficult times and to give him support in whatever way we can when he is release." *Letter of Andrew Wong, Exhibit A* at EL000019. "He will be welcomed home with open arms." *Id.*

Mr. Looi's wife and family are not wealthy, and they cannot afford to fly to the United States for the sentencing hearing.[9] They have, however, been tremendously supportive throughout Mr. Looi's entire case. Mr. Looi's wife, brother, and aunt have attended court appearances and have met at length with undersigned counsel. They have corresponded or called undersigned counsel on a weekly basis about the case, speak and visit Mr. Looi regularly, and are committed to maintaining that support network through his incarceration and beyond. As the defendant's wife movingly proclaims, "I stand by him through this and will continue to be there for him when he returns. If given a choice to choose a husband all over, I would without a moment's hesitation choose him again because of whom he is – a caring, loving husband and wonderful human being." *Id.* at EL00004. In sum, the extensive network of family support bodes very well for Mr. Looi's rehabilitation and re-integration into society, and a sentence longer than forty-six months is unnecessary to "protect the public from further crimes of the defendant." 18 USC § 3553(a)(2)(C).

The letters of support of Edmond Looi also highlight the unusually difficult custodial conditions that he will endure in this case. Most federal defendants – indeed, even illegal reentry defendants – enjoy a network of family and friends within the United

[9] "Due to distance and financial commitments, we are unable to attend the court hearings, but we certainly support him fully." *Exhibit A, Letter of Peik Khoon Looi*, EL000004.

States who can visit and provide support during incarceration. Edmond Looi's wife and family, by contrast, are thousands of miles away in Singapore. Financial limitations mean that their visits will be infrequent during the almost four years of incarceration that he faces.

Morever, because he is neither a United States citizen or Legal Permanent Resident, the Bureau of Prisons will assign him as a higher security-risk designation. As a non-citizen, he will not be permitted the transitional housing (a half-way house) routinely provided to other federal inmates during the last six months of their sentence. Thus, Mr. Looi will serve a longer custodial sentence, in a higher-security facility, than a comparable U.S. citizen convicted of the same offense. The forty-six month sentence fairly acknowledges this difference, and helps to mitigate "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 USC § 3553(a)(7).

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

**Conclusion**

The *Looi* disposition was the first thing upon which AUSA Morgan-Kelly and undersigned counsel agreed during her tenure in the Northern District. Now that she has left the district for practice in Philadelphia, the *Looi* plea agreement represents the *only* thing upon which counsel agreed.

This is a fair deal. It contemplates a sentence that the Court can adopt without any disrespect to the victims of child pornography, and without undermining the goals of the Sentencing Reform Act. For the reasons stated above, Mr. Looi respectfully requests that this Court accept the 11(c)(1)(C) agreement and impose the sentence of forty-six months jointly recommended by the parties.

Dated: September 12, 2007

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/s

STEVEN G. KALAR
Assistant Federal Public Defender